IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LEASA CARRINGTON a/k/a Leasa Carr, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 20-cv-00573-SRB ) |
| JESUS O. VARELA and JOV SERVICES, | ) ) |
| Defendants. | ) ) |

## ORDER

Before the Court is Plaintiff Leasa Carrington's Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b). (Doc. #31.) For the reasons stated below, the motion is granted in part and denied in part.

### I. BACKGROUND

This lawsuit arises from Plaintiff's purchase of a residential property located at 13001 St. Andrews Drive in Kansas City, Missouri, 64145 (hereinafter the "Property"), located in Jackson County, Missouri. Since Defendants Jesus O. Varela ("Varela") and JOV Services have failed to defend or otherwise respond to this action and default has been entered, the factual allegations contained in Plaintiff's amended complaint are taken as true. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).

On August 22, 2017, Plaintiff purchased the Property via contract from Domenic Jones and Haley Jones, a married couple and the Property's previous owners (the "Sellers"). During December 2017, Plaintiff became aware of a number of undisclosed conditions and defects in the Property that have caused the Property to significantly decrease in value. Specifically, Plaintiff discovered that the Property suffers from, among other things: movement, shifting, or structural

1

problems within the walls, foundation, and slab; a disconnected basement shower drain; a garage slab in serious disrepair; undisclosed piering; significant interior tile, drywall, and trim damage; substandard or improper interior framing; the unpermitted installation of an electrical box; and shifting door jambs.

Prior to Plaintiff's purchase of the Property, the Sellers hired Varela and/or his business, JOV Services, to perform various repairs, renovations, and remodeling services to the Property. No permits were ever obtained from either Jackson County, Missouri, or the City of Kansas City, Missouri, prior to making the earlier-described renovations. Before Plaintiff purchased the Property, the Sellers provided Plaintiff with a copy of a Seller's Disclosure and Condition of the Property Addendum (the "Disclosure"). The Disclosure stated, in part, that the Sellers were not aware of any material defects in the Property, including:

> (a) any sliding, settling, earth movement, upheaval or earth stability problems on the Property;
> (b) any movement, shifting deterioration, or other problems with walls, foundations, crawl space, or slab;
> (c) any cracks or flaws in the walls, ceilings, foundations, concrete slab, crawl space, basement floor or garage;
> (d) any water leakage or dampness in the house, crawl space, or basement;
> (e) any problems with driveways, patios, decks, fences or retaining walls on the Property;
> (f) any repairs or other attempts to control the cause or effect of any problems;
> (g) leaks, backups, or other problems relating to any of the plumbing, water, and sewage related systems;
> (h) any violation of laws or regulations affecting the property; and
> (i) any other conditions that may materially affect the value or desirability of the property.

(Doc. #21, ¶ 11.) Plaintiff alleges the defects have significantly decreased the Property's fair market value and need to be repaired.

On June 9, 2020, Plaintiff filed a petition[1] for damages in Missouri state court, asserting negligence and negligence per se claims against the Sellers in addition to claims for intentional misrepresentation, negligent misrepresentation, and breach of contract. The Sellers subsequently removed the case to federal court based on diversity jurisdiction. On January 8, 2021, Plaintiff filed an amended complaint adding Varela and JOV Services as defendants to her negligence claim (Count III) and negligence per se claim (Count V). (Doc. #21.) Shortly after filing her amended complaint, Plaintiff voluntarily dismissed with prejudice her claims against the Sellers (Doc. #23), leaving only her negligence claims against Defendants Varela and JOV Services.

Defendants were served with the summons and complaint on January 23, 2021. At no point did Defendants respond to Plaintiff's complaint or otherwise enter an appearance in this case. On February 25, 2021, Plaintiff filed a motion asking the Clerk of the Court for an Entry of Default pursuant to Federal Rule of Civil Procedure 55(a), stating Defendants had failed to plead or otherwise defend against this action. (Doc. #28). The Clerk entered default on February 26, 2021 (Doc. #29), and Plaintiff subsequently filed a motion for default judgment pursuant to Rule 55(b) on March 1, 2020.

Plaintiff seeks a $119,400.00 damage award, the estimated cost to repair the Property's alleged defects. On March 15, 2021, the Court ordered Plaintiff to provide supplemental briefing on the issue of liability and to submit additional evidentiary support of her damages. Plaintiff filed her supplemental briefing, as well as additional documentation in support of her claimed damages, on March 31, 2021. As of the date of this Order's issuance, neither Varela nor JOV Services have entered an appearance or filed any documents with the Court.

---

[1] The Court will hereinafter refer to this initial pleading as "complaint" in order to correspond with the terminology used in the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." "[E]ntry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). Once default is entered, the defaulting defendant "has no further standing to contest the factual allegations of plaintiff's claim for relief" and he "is deemed to have admitted all well pleaded allegations in the complaint." *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988) (citation omitted); *see also Murray*, 595 F.3d at 871 ("Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true[.]"). A court must then review the complaint and "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Murray*, 595 F.3d at 871).

"If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the amount of the default judgment must be ascertained." *Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1069 (D. Minn. 2019) (citation omitted); *see also Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (noting default judgment cannot be entered "until the amount of damages has been ascertained"). If the judgment sought by the plaintiff is not for a sum certain, Rule 55(b)(2) provides that "the court may conduct such hearings or order such references as it deems necessary and proper" in order to "enable the court to enter judgment." Fed. R. Civ. P. 55(b)(2); *accord Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) ("When a default judgment is entered on a claim for an indefinite

4

or uncertain amount of damages . . . facts relating to the amount of damages . . . must be proved in a supplemental hearing or proceeding."). Alternatively, a court may also determine the amount of damages based upon affidavits and documentary evidence supplied by the plaintiff. *See Taylor*, 859 F.2d at 1333 (citations omitted) (finding an evidentiary hearing unnecessary when damages "are capable of being computed on the basis of facts of record"). Whether an evidentiary hearing is necessary to determine the amount of plaintiff's damages is a decision soundly committed to the discretion of the district court. *See id.*

### III. DISCUSSION

Before considering a party's request for the entry of default judgment, the entering court must confirm that it possesses subject-matter jurisdiction over the dispute. The Court confirms this necessary prerequisite is satisfied, as there is complete diversity among the parties[2] and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Accordingly, this Court has authority to consider whether Plaintiff is entitled to default judgment in this matter.[3]

---

[2] For purposes of diversity jurisdiction, Plaintiff alleges she is a citizen of Missouri and that Varela is a resident of Kansas. (Doc. #21, ¶¶ 1, 3.) As explained *infra* Section III.A.1, the citizenship of JOV Services is not relevant because it is not capable of being sued in its own name.

[3] Some district courts within the Eighth Circuit have held that a court must also confirm that it has personal jurisdiction over the defaulting parties. *See, e.g.*, *Nuevos Destinos, LLC v. Peck*, No. 19-CV-00045, 2020 WL 6318219, at *1 (D.N.D. Mar. 10, 2020); *Metro. Cas. Ins. Co. v. Combs*, No. 13-CV-1813, 2014 WL 988452, at *6 (E.D. Mo. Mar. 13, 2014) (quoting 2 MOORE'S FED. PRACTICE § 12.31) ("'[W]hen a court is considering whether to enter a default judgment, the court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties, and may raise the question of personal jurisdiction sua sponte and dismiss on that ground rather than enter the default.'"). Assuming, without deciding, that such a determination must be made prior to entering default judgment, Plaintiff's allegations sufficiently establish this Court's personal jurisdiction over Varela, as the alleged defective or substandard renovations and repairs Varela performed to the Property occurred in Missouri and give rise to Plaintiff's negligence claims. *See Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (citation omitted) (specific personal jurisdiction is proper "if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities"); *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (citations omitted) ("Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia,* transact business [or] make a contract . . . within the state.").

### A. Default Judgment

In her amended complaint, Plaintiff names both Varela and JOV Services and asserts two claims against them: (1) Count III: Negligence, and (2) Count V: Negligence Per Se. Because a defaulting party does not admit to any conclusions of law raised in a plaintiff's complaint, it remains this Court's task to determine if Plaintiff's taken-as-true factual allegations constitute a legitimate cause of action and, if so, to ascertain the amount of damages. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019) (cleaned up) ("[W]hile it is . . . appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner, it is nonetheless incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment."). A federal district court sitting in diversity jurisdiction applies the substantive law of the forum state which, in this case, is Missouri. *Aragon v. Wal-Mart Stores E., LP*, 735 F.3d 807, 809 (8th Cir. 2013). The Court thus looks to Missouri law in evaluating whether Plaintiff alleges a legitimate cause of action.

#### 1. Capacity of Defendant JOV Services to be Sued

As a threshold matter, Plaintiff seeks entry of default judgment against Varela as well as his business, JOV Services. Plaintiff alleges Defendant JOV Services "is a sole proprietorship owned and operated by Defendant Jesus Varela." (Doc. #21, ¶ 4.) Before determining whether Plaintiff's unchallenged facts constitute a legitimate cause of action, the Court must first consider whether JOV Services, as a named defendant, has the capacity to be sued.

Rule 17 requires an action "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The ability to sue a sole proprietorship in its own name is governed by Rule 17(b)(3), which provides that the ability to sue parties other than individuals and corporations is determined by the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3); *accord Bigfoot*

*on the Strip, LLC v. Winchester*, No. 18-CV-3155-BP, 2018 WL 3676962, at *2 (W.D. Mo. Aug. 2, 2018). As observed by the Honorable Beth Phillips:

> Under Missouri law, sole proprietorships have no independent existence. "[A] sole proprietorship has a single owner and is characterized by the complete identity of the business entity with the individual doing business." *Morgan Wightman Supply Co. v. Smith*, 764 S.W.2d 485, 492 (Mo. Ct. App. 1989) (quotation omitted); *see also Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 621 (Mo. 1977) (en banc).

*Winchester*, 2018 WL 3676962, at *2; *see also Mason v. Sailormen Inc.*, No. 11-CV-637-CAS, 2012 WL 1957413, at *3 (E.D. Mo. May 31, 2012) (noting "when a state's law does not consider a sole proprietorship to be a separate legal entity, a suit involving a sole proprietorship must name the owner as the party plaintiff or defendant") (collecting cases finding the same).

Accordingly, the Court finds JOV Services has no independent existence from Varela and is not an entity capable of being sued in its own name.[4] In turn, JOV Services is dismissed and Plaintiff's motion for default judgment is limited to Varela, the alleged owner of JOV Services.

### 2. Count III: Negligence

"Negligence is the failure to exercise the degree of care which a reasonably prudent and careful person would use under the same or similar circumstances." *Chiney v. Am. Drug Stores, Inc.*, 21 S.W.3d 14, 16 (Mo. App. W.D. 2000) (citation omitted). To succeed on a negligence claim under Missouri law, the plaintiff must plead facts that show: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff's injury. *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018). "Duty is an obligation imposed by law to conform to a standard of conduct toward another to protect others against unreasonable, foreseeable risks." *Chiney*, 21

---

[4] Furthermore, the Court independently examined the Kansas and Missouri Secretary of State websites (https://www.kansas.gov/bess/ and https://bsd.sos.mo.gov/search, respectively), and takes judicial notice of the fact that, per those websites, JOV Services is not a registered business entity in either state as of March 11, 2021.

S.W.3d at 16 (citation omitted). A legal duty of care may arise from three sources: "(1) it may be prescribed by the legislature; (2) it may arise because the common law imposes a duty based on the relationship between the parties, or because under a particular set of circumstances a party must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or conduct." *Scales v. Whitaker*, 615 S.W. 3d 425, 431 (Mo. App. E.D. 2020) (citations omitted).

Plaintiff alleges Varela's negligent contractor work performed for the Sellers renders him liable to her, as the purchaser of the remodeled Property, under established tort law principles.[5] Missouri courts recognize that "[c]ontractors owe a duty to exercise the care required of their profession to those with whom they are not in privity when injury to those third persons is foreseeable." *Honey v. Barnes Hosp.*, 708 S.W.2d 686, 700 (Mo. App. E.D. 1986) (citations omitted). "After the owner accepts a structure, the general rule is that a general contractor is not liable to persons with whom he did not contract." *Id.* (citation omitted); *accord Gast v. Shell Oil Co.*, 819 S.W.2d 367, 369–70 (Mo. banc 1991). However, there is "an exception to 'the general rule of nonliability after acceptance of the work for injuries to third persons with whom the contractor is not in a contractual relation' known as the 'imminently dangerous' exception." *Tokio Marine Am. Ins. Co. v. Pro. Svs. Ind. Inc.*, No. 18-CV-00931-HFS, 2020 WL 7647555, at *6 (W.D. Mo. Dec. 23, 2020) (citations omitted); *see also Gast*, 819 S.W.2d at 370. Under the "imminently dangerous" exception:

---

[5] Plaintiff's amended complaint, filed prior to her dismissal of the Sellers, generally asserts her Count III negligence claim against "all defendants." The factual allegations that appear to relate specifically to Varela, as the contractor, are that he "fail[ed] to take due care in renovating, altering or otherwise structurally changing the Property without the proper skill, knowledge and expertise," "fail[ed] to take due care in obtaining permits and/or approvals from the appropriate authorities," "ma[de] certain repairs, alterations, renovations, and/or structural changes that were substandard and/or improperly done" and "fail[ed] to obtain the proper skill, knowledge, and/or expertise prior to making" those repairs. (Doc. #21, ¶ 45.)

8

> [A] duty of care by a contractor to third persons not in privity arises, even after acceptance of the work by the owner, where the work is so defectively done as to be imminently dangerous and the defects are so hidden and concealed that a reasonably careful inspection would have not revealed them, and the contractor had knowledge, actual or constructive, of the dangerous condition and the resultant risk to human life.

*Coleman v. City of Kansas City*, 859 S.W.2d 141, 147 (Mo. App. W.D. 1993) (citation omitted).

Upon review of the record and applicable caselaw, the Court finds Plaintiff's Count III factual allegations, taken as true, constitute a legitimate cause of action. Though a third-party claim against a contractor for negligence is generally barred upon the owner's acceptance of the contractor's work, Plaintiff alleges facts which implicate the imminently dangerous exception. In particular, Plaintiff alleges Varela's defective repairs were "latent," and in her supplemental briefing argues the nature of the defects meant they were hidden, concealed, and not able to be discovered even upon careful inspection. (Doc. #21, ¶ 16.) Plaintiff alleges the defects "were material to [her] occupancy and ownership of the Property," and in her supplemental briefing further explains that the defects deny Plaintiff the full use of the Property, including her inability to use a portion of the upstairs floor "for any 'weight-bearing' activities." (Doc. #33, p. 4.) Her taken-as-true allegations sufficiently allege defects in the Property that may pose an imminent or inherent risk of harm, even though no such harm has yet occurred. *See Tokio Marine*, 2020 WL 7647555, at *7 (citation omitted) (an inherent danger may be shown "if the construction is such that danger may be anticipated therefrom by reason of its very defects it is imminent or inherent, even though it does not occur immediately or soon after use."). Lastly, given her allegations that Varela performed the substandard repairs and renovations in an unworkmanlike manner, Plaintiff sufficiently alleges facts indicating Varela, as the contractor, knew or should have known of the defects.

"If a duty to plaintiff exists, the next question to be resolved is the type of injury for which liability attaches." *Miller v. Big River Concrete, LLC*, 14 S.W.3d 129, 134 (Mo. App. E.D. 2000) (citing *Fleischer v. Hellmuth, Obata & Kassabaum, Inc.*, 870 S.W.2d 832, 835 (Mo. App. E.D. 1993)). Having found that Plaintiff's allegations are sufficient to show Varela owned her a legal duty, the Court must also consider if Plaintiff alleges an injury to which liability may attach. Plaintiff alleges she has been damaged by Varela's negligent work, specifically that the "defects are in desperate need of repair" and the Property's value has "substantially decreased due to these defects." (Doc. #21, ¶ 14.)

"Missouri [law] prohibits a cause of action in tort where the losses are purely economic" in nature and limits recovery in tort "to cases in which there has been personal injury, or property damage either to property other than the property sold, or to the property sold when it is rendered useless by some violent occurrence." *Rockport Pharm., Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995) (cleaned up) (collecting Missouri cases finding the same). Some courts have found economic damages recoverable, however, where the contractor's negligent work also interfered with the claimant's property interest. *See, e.g.*, *Big River Concrete*, 14 S.W.3d at 134 (discussing *Chubb Grp. of Ins. Companies v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766, 778 (Mo. App. W.D. 1983)). In light of those decisions, and given that Varela's default means that he has no further standing to contest the factual allegations of Plaintiff's claim for relief, the Court finds the factual allegations of Count III of Plaintiff's amended complaint put forth a legitimate cause of action. Plaintiff is entitled to default judgment on Count III against Varela.

### 3. Count V: Negligence Per Se

"The violation of a statute, which is shown to be the proximate cause of the injury, is negligence per se." *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. App. E.D.

2018) (citing *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. App. E.D. 2012)). "Negligence per se arises when the legislature pronounces in a statute what the conduct of a reasonable person must be and the court adopts the statutory standard of care to define the standard of conduct of a reasonable person." *Dibrill*, 383 S.W.3d at 84. A negligence per se claim can be based on the violation of an ordinance, but the "requirements of the ordinance must not conflict with the common law."[6] *Martinez*, 551 S.W.3d at 496. Under Missouri law, "[f]our requirements must be met to establish a claim for negligence per se: (1) a violation of a statute or ordinance; (2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; (3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and (4) the violation of the statute or ordinance must be the proximate cause of the injury." *Lowdermilk v. Vescovo Bldg. & Realty Co.*, 91 S.W.3d 617, 628 (Mo. App. E.D. 2002) (citation omitted).

Plaintiff alleges a negligence per se claim arising from Varela's failure to obtain permits for the alterations and renovations he performed to the Property, citing Kansas City, Missouri – Code of Ordinances, Ch. 18-2(a):

> This chapter shall be construed to secure its expressed intent, which is to provide minimum requirements to safeguard the public safety, health and general welfare, insofar as they are affected by building construction, . . . and in general to promote safety to life and property from fire and other hazards incident to the construction, design, erection, installation, alteration, addition, removal, demolition, replacement, location, relocation, moving, quality of materials or use and occupancy[.]

---

[6] Unlike ordinances, statutes "comprise state law and amend the common law of Missouri, and thus create no conflict. *See Mediq*, 899 S.W.2d at 110 ('[T]he state legislature has authority to enact statutes that override the common law of the state.')." *Martinez*, 551 S.W.3d at 496. However, "[o]rdinances enacted to protect persons or property, conserve public health, or promote public safety are not considered as creating a new liability, but merely as defining the duty already owed at common law to the public or the person injured." *Id.* (citing *Eckert v. Thole*, 857 S.W.2d 543, 545 (Mo. App. E.D. 1993)).

11

Plaintiff also references Code of Ordinances, Ch. 18-16(b) (providing a list of actions that do not require building permits), Ch. 18-16(b)(5), Ch. 18-16(b)(2), and Ch. 18-17(b) as they relate to electrical permits, plumbing permits, and permits needed to "move, raise or shore a structure" respectively.[7] "In construing the meaning of an ordinance, we must give the words their plain and ordinary meaning, consider the entire act and its purposes, and avoid unjust, absurd, unreasonable, confiscatory or oppressive results." *Mediq PRN Life Support Servs., Inc. v. Abrams*, 899 S.W.2d 101, 110 (Mo. App. E.D. 1994) (citations omitted).

As a preliminary matter, the Court reviews the City Ordinance at issue to determine if it is the proper basis of Plaintiff's negligence per se claim. The Court finds it is not. Although Ch. 18-2(a) states its intent is "to safeguard the public safety, health and general welfare, insofar as they are affected by building construction," it also includes express language stating that "[t]he purpose of this chapter is not to create or otherwise establish or designate any particular class or group of persons who will or should be especially protected or benefited by the terms of this chapter." The Court construes this language to expressly preclude a plaintiff from using the cited ordinance to claim protection or otherwise benefit from the terms of Chapter 18. Consequently, Plaintiff cannot be "within the class of persons intended to be protected by the . . . ordinance." *Lowdermilk*, 91 S.W.3d at 628. Plaintiff's request for default judgment with respect to her Count V negligence per se claim is therefore denied.

---

[7] In her First Amended Petition, Plaintiff's negligence per se claim identified an entire chapter of Kansas City, Missouri Ordinances but did not cite with specificity the particular ordinance giving rise to her claim. (Doc. #21, ¶ 59.) In turn, the Court requested supplemental briefing asking Plaintiff to identify the specific ordinance(s) underlying her claim for relief. In her supplemental briefing, Plaintiff cited Ch. 18-2(a), 18-16(b)(1)(a)-(aa), 18-16(b)(5)(a)-(e), 18-16(b)(2)(a)-(i), and 18-17(b).

12

### B. Damages

Given the Court's determination that Plaintiff has alleged a legitimate cause of action in her Count III negligence claim, the Court now considers the issue of damages. *See Adventure Creative Grp.*, 412 F. Supp. 3d at 1069. Plaintiff seeks an award of $119,490.00, based on the estimated cost to repair the alleged defects ($119,400.00) and the costs incurred by bringing this lawsuit ($90.00). (Doc. #31, ¶¶ 17–19.) In support of her requested damages award, Plaintiff provides: a contractor's estimate of repairs (Doc. #31-1); evidence documenting her purchase price of the Property in 2017 (Doc. #33-1) and the original purchase price paid by the Sellers in 2014 (Doc. #33-2); an affidavit by Plaintiff as to her personal belief regarding the fair market value of the property (Doc. #33-4); and a copy of an engineering and structural assessment report issued in July 2019 (Doc. #33-5).

"The goal of awarding damages is to compensate a party for a legally recognized loss." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005) (citations omitted). "The general rule is that the measure of damages for tortious injury to real property is the difference in the fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount." *Jungers v. Webster Elec. Coop., Inc.*, 577 S.W.3d 498, 503 (Mo. App. S.D. 2019) (citation omitted); *see also Jack L. Baker Cos. v. Pasley Mfg. & Distrib. Co.*, 413 S.W.2d 268, 273 (Mo. 1967) ("Cases in [Missouri] do recognize that where damaged property can be restored to its former condition at a cost less than the diminution in value, the cost of restoration is the proper recovery.").

Upon review of the record, the Court finds it is able to ascertain the amount of damages based on the submitted evidence, making a hearing on the issue unnecessary. Plaintiff's affidavit

13

and submitted documentation state that the estimated costs to repair the Property are $119,400,[8] while the diminution in value is $171,000.[9] Because the estimated cost of repair is less than the diminution in value, the Court finds $119,400 is the appropriate value of damages. *See Jungers*, 577 S.W.3d at 503. The Court additionally awards Plaintiff the $90.00 in costs claimed in her motion for default judgment. (Doc. #31, p. 3.)

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED, ADJUDGED, and DECREED** that:

(1) Plaintiff's Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) (Doc. #31) is **GRANTED IN PART** and **DENIED IN PART** for the forgoing reasons;

(2) Default judgment pursuant to Rule 55(b) is entered in favor of Plaintiff Leasa Carrington and against Defendant Jesus Varela, and Defendant JOV Services is dismissed as a party; and

(3) The total award amount owed to Plaintiff is $119,490.00.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: April 5, 2021

---

[8] This estimate is based on a bid by Partners Achieving Construction Together, issued on or about November 3, 2020. (Doc. #31-1.)

[9] This value is calculated by taking the balance Plaintiff paid to purchase the home in 2017 ($349,000.00) and subtracting from that amount the value Plaintiff believes she would receive ($178,000.00) if she sold the home as-is without making the necessary repairs that form the basis of this lawsuit. The result is $171,000.00. (Doc. #33-4.)